# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

May 31, 2012

**Before**

MICHAEL S. KANNE, *Circuit Judge*
DIANE S. SYKES, *Circuit Judge*
DAVID F. HAMILTON, *Circuit Judge*

No. 11-2423

EXELON GENERATION COMPANY, LLC,

*Plaintiff/Counter-Defendant-Appellee,*

*v.*

LOCAL 15, INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, AFL-CIO,

*Defendant/Counter-Plaintiff-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:10-cv-4846—**Robert W. Gettleman**, *Judge*.

**O R D E R**

On consideration of the petition for rehearing en banc, filed on April 13, 2012, all judges on the original panel

have voted to deny the petition for panel rehearing, and no judge in active service has requested a vote for rehearing en banc.[*]

Accordingly, the petition for rehearing en banc is DENIED.

POSNER, *Circuit Judge.* Although I asked for a response to the petition for rehearing, I am persuaded that the panel decision is sound and that the criteria for granting rehearing en banc have not been satisfied. But the result is disturbing, and while there is nothing judges can do without exceeding the proper bounds of our office, Congress and the Nuclear Regulatory Commission can do something and one or both of them should.

Federal law prescribes stringent requirements that operators of nuclear facilities must follow before granting persons, including plant employees, "unescorted access" to the facility. 10 C.F.R. §§ 73.56, -.57. Exelon, however, which is one of these operators, has signed a collective bargaining agreement with a union representing its employees that provides for binding arbitration of disputes over "working conditions," a term that has been interpreted (Exelon does not challenge the inter-

---

[*] Judges Rovner and Williams did not participate in the consideration of the Petition for Rehearing En Banc.

pretation) to include disputes over whether a worker deprived of his right of unescorted access (that is, his security clearance) was properly deprived of it.

Exelon discharged two employees, the first for failing a drug and alcohol test and lying about his substance abuse, and the second for lying about his alcohol abuse. Exelon's Nuclear Security Department further determined that the employees' lies revealed them to be untrustworthy, and on that ground it revoked the right of unescorted access that they had needed to perform their jobs. The two employees filed grievances with the union, seeking reinstatement and return of their clearances, and the grievances were moving toward arbitration when Exelon brought this declaratory judgment action against the union, claiming that although arbitrators can order reinstatement of terminated employees they are forbidden by regulations of the Nuclear Regulatory Commissions to restore unescorted access privileges that Exelon has revoked—which would preclude reinstatement of employees, like the two just mentioned, whose jobs require that they have unescorted access.

The Commission does not review grants or denials of these security clearances. The nuclear energy companies grant them, and claim the right to revoke them subject to no judicial or administrative review. The union disagrees only to the extent that it thinks an arbitrator—a private citizen, not a government employee—can restore a security clearance yanked by the employer. Under either view the government plays no role. The result is a void that is both strange and dangerous. The safety of

nuclear energy facilities cannot be taken for granted. See, e.g., Carl Behrens & Mark Holt, "Nuclear Power Plants: Vulnerability to Terrorist Attack" (CRS [Congressional Research Service] Report for Congress, Feb. 4, 2005), www.fas.org/irp/crs/RS21131.pdf (visited May 18, 2012). The employer should have a right to invoke administrative review of a labor arbitrator's restoration of a revoked security clearance. Equally an employee claiming to have been wrongfully deprived of his security clearance should have a right to administrative review because the deprivation may bar him from future employment in his chosen line of work. But it is the failure to provide public remedies for grants of security clearances that is especially disturbing. An errant employee of a nuclear power plant, including a substance abuser who is also a liar, could do catastrophic damage.

Arbitrators are selected by or with the consent of the parties. An arbitrator who gets a reputation for favoring one side in a class of cases, such as cases of employment termination, or disputes between investors and brokers or between management and unions, will be unacceptable to one of the parties in any future dispute, and so the demand for his services will wither. A resulting tendency of arbitrators to split the difference in their awards—that is, to give each side a partial victory (and therefore partial defeat)—has been observed. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 693 (Cal. 2000); Donald Wittman, "Lay Juries, Professional Arbitrators, and the Arbitrator; Selection Hypothesis," 5 *American Law & Econ. Rev.* 61, 81 (2003); Estelle D. Franklin,

"Maneuvering Through the Labyrinth: The Employers' Paradox in Responding to Hostile Environment Sexual Harassment—A Proposed Way Out," 67 *Fordham L. Rev.* 1517, 1565 (1999); Robert Haig, "Corporate Counsel's Guide: Legal Development Report on Cost-Effective Management of Corporate Litigation," 610 *PLI/Lit* 177, 186-87 (1999). Splitting the difference makes it difficult for parties on either side in a class of disputes to infer a pattern of favoritism. Risk-averse disputants like the split-the-difference approach because it truncates both the upside risk and the downside risk of the dispute-resolution process. This in turn helps differentiate arbitration from adjudication, typically an all-or-nothing affair. Differentiation is essential to the success of arbitration as an alternative to adjudication because adjudication is subsidized by the government and arbitration is not. The public subsidy of the courts places arbitrators at a cost disadvantage. One way to overcome it is to offer a service unavailable from the courts, and split-the-difference decisionmaking is such a service.

Tugging the other way is the incentive of arbitrators to cultivate a reputation for competence, which may hold the split-the-difference tendency at bay. A recent study finds that the tendency does not characterize "investment treaty" arbitration, Daphna Kapeliuk, "The Repeat Appointment Factor: Exploring Decision Patterns of Elite Investment Arbitrators," 96 *Cornell L. Rev.* 47, 83 (2010), though that is an esoteric area of dispute resolution, remote from labor arbitration, and so Kapeliuk's findings may not be applicable to the latter.

There are enough indications of split-the-difference behavior in labor arbitration to make one worry about the possible tendency of an arbitrator reviewing a nuclear facility's revocation of an employee's security clearance to impose a sanction that would enable him to retain a right of unescorted access to the facility even if he were a drug addict, a drunkard, and a congenital liar all rolled up into one.

The Commission could amend its regulations to forbid collective bargaining agreements to empower arbitrators to resolve disputes over security clearances. See 42 U.S.C. §§ 2201(b), (i), (p). It could establish the type of administrative process that I have suggested. See *id*. As could Congress. So far the Commission has been content with requiring its licensees to establish security clearance systems with one layer of internal review and allowing arbitration pursuant to collective bargaining agreements to (in effect) overrule a licensee's revocation of a clearance. It is time that the Commission, or failing that Congress, instituted administrative review of decisions by private arbitrators granting or denying security clearances to employees of nuclear facilities.

An alternative would be to forbid split-the-difference awards. The common split award in labor arbitration is reinstatement without back pay but with a last-chance clause. The Commission might provide by regulation that unless the arbitrator decides that the employee is right in all respects—for example, never had a drinking problem and always told the truth and so is entitled to reinstatement with full back pay—the security clearance cannot be reinstated.

Not all nuclear facilities are unionized. In those that are not, employers have carte blanche to revoke security clearances. Those decisions too should be subject to administrative review.

But whatever the correct solution to the problems created by the mysterious absence of government review of decisions involving security clearances for employees of nuclear facilities, it is beyond judicial authority to command.